UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

McCONNELL PORTER,

                  Plaintiff,        Civil Action No. 18-10690

v.                                   Honorable Terrance G. Berg
                                           Magistrate Judge David R. Grand

LORI CONANT and ROBERT FALOR,

                  Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (ECF No. 25)**

On February 23, 2018, Plaintiff McConnell Porter ("Porter") commenced this action against two corrections officers from the Parnell Correctional Facility ("SMT") in Jackson, Michigan, Lori Conant ("Conant") and Robert Falor ("Falor") (collectively, "Defendants"). In his operative amended complaint, Porter contends that Defendants (1) were deliberately indifferent to his serious medical needs, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment, and (2) discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 121010 *et seq*. (ECF No. 17.) On May 31, 2019, the Court entered an Order of Reference, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (ECF No. 7.)

On September 29, 2020, Defendants filed a motion for summary judgment. (ECF No. 25.) On October 30, 2020, Porter filed a response (ECF No. 28), and Defendants replied on November 9, 2020 (ECF No. 29). Pursuant to E.D. Mich. L.R. 7.1(f) and Fed. R. Civ. P. 78(b), the Court will decide the motion on the pleadings and without a hearing.

I.      **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment (**ECF No. 25**) be **GRANTED**.

II.     **REPORT**

A.      **Statement of Facts**

On September 25, 2016, while incarcerated at Michigan Training Unit Facility ("MTU"), Porter suffered his fourth stroke. (ECF No. 17, PageID.116.) According to Porter, as a result of this stroke, he suffered "major paralysis, blurred speech and medium brain damage," resulting in the inability to participate in major life activities such as walking, bathing, eating and using the rest room. (*Id.*) On January 2, 2017, the Michigan Department of Corrections ("MDOC") transferred Porter to the SMT facility. (*Id.*) Porter alleges that he was "'wheel-chair bound' from the time [he] transferred to SMT to [the time he] transferred out." (ECF No. 28, PageID.274.)

However, as discussed below, *infra* at 3, Porter's MDOC medical records reflect that, while at SMT, he was not issued a wheelchair medical detail until August 22, 2017. (ECF No. 25-2, PageID.179, 185.)[1] Nevertheless, Porter alleges that he "used a wheel chair in the chow hall the whole time [he] was at SMT, with the exception of when CO Conant worked the chow hall (which was infrequent), from January 2017, until the date of my incident with CO Conant and CO Falor, on August 28, 2017." (ECF No. 28, PageID.274.)

Before turning to the "incident" referenced by Porter, the Court provides some important undisputed background information about SMT. "SMT is not a barrier-free facility." (ECF No. 25-2, PageID.217; *see also* ECF No. 25-2, PageID.196; No. 25-3, PageID.221.) "SMT is

---

[1] It appears that while at MTU, Porter had been issued a wheelchair for "distance" medical detail from September 23, 2016 through June 26, 2017, as well as a walker from November 17, 2016 through November 17, 2017. (ECF No. 1, PageID.18.)

designated as a 'wheelchair for distance only' facility, meaning that SMT cannot support the use of wheelchairs in indoor common and living spaces, including within chow hall, as SMT is not barrier-free and is not designed for wheelchairs to be used in these areas." (ECF No. 25-5, PageID.235; *see also* ECF No. 25-2, PageID.196 (identifying SMT as a "wheelchair for distance only" facility).) As such, "[m]edical [d]etails for wheelchairs are allowed at SMT, as necessary, for distance only, to assist prisoners who have difficulty walking long distances between locations." (ECF No. 25-4, PageID.228.) This means "wheelchairs are not permitted to be used inside [SMT's] chow hall" because "[i]t is not safe for the patient or other prisoners to use wheelchairs in indoor common spaces including chow hall." (ECF No. 25-2, PageID.178; No. 25-3, PageID.203.) Defendants have always understood that "SMT is designated as a 'wheelchair for distance only' facility with respect to wheelchair use." (*Id.*) Porter goes so far as to admit that based on SMT's classification as a "wheelchair for distance only" facility, "the mistake was SMT accepting [him]" there to begin with. (ECF No. 28, PageID.268.)

After he arrived at SMT, Porter was given numerous medical accommodations, but, according to his medical records, it was not until August 22, 2017, that Physician's Assistant Donna M. Rohrs ("PA Rohrs") issued a medical detail regarding Porter's use of a wheelchair. (ECF No. 25-2, PageID.179, 185.) Specifically, on that date, PA Rohrs issued a medical detail authorizing Porter to use a wheelchair for "distance **and in chow hall**." (ECF No. 25-2, PageID.185) (emphasis added).

Turning to the events in question, on August 28, 2017, Porter entered the chow hall using his wheelchair. (ECF Nos. 25, PageID.155; 25-2, PageID.179.) Defendants Conant and Falor were working there at the time, and, in light of the fact that SMT is a "wheelchair for distance only" facility, they "walked up to [Porter] to explain that he was not permitted to use his wheelchair

3

in chow hall." (ECF No. 25-2, PageID.179.) Conant asserts that, "[Porter] became upset and advised us that he had a medical detail allowing him to use his wheelchair in the chow hall." (*Id.*)

Conant and Falor then went to SMT's healthcare unit to determine the status of Porter's medical detail. (*Id.*) They learned that, as Porter contended, he had been issued a medical detail for use of a wheelchair not only for distance, but also "in chow hall." (*Id.*) They discussed the matter with Nurse Practitioner Peter M. Watson ("NP Watson"), who acknowledged that Porter's detail was "inconsistent with SMT's wheelchair policy, and agreed to revise the [] medical detail." (*Id.*; ECF No. 25-4, PageID.228-29.) NP Watson then "made appropriate revisions to [Porter's] detail to reflect: "Patient to use wheelchair for distance only. Patient to use walker while in chow hall and while in health care." (ECF No. 25-4, PageID.228-29 (quoting *id.*, PageID.232.)) NP Watson, who is not a party to this litigation, avers, "[t]he revisions I made to [Porter's] Medical Detail are consistent with my understanding of SMT's wheelchair policy and facility designation." (*Id.*, PageID.232.)

Porter states that he "underwent excruciating pain and suffering in the chow hall after August 28, 2017, as a result of having to use a walker to collect [his] meals." (*Id.*) Porter was eventually transferred to the Lakeland Correctional Facility, which is wheelchair accessible. (ECF No. 25-2, PageID.196.)

      **B.**      **MDOC Policy Directive 04.06.160**

MDOC Policy Directive 04.06.160 ("PD 160") regarding medical details and special accommodation notices states:

> K.     A currently valid Medical Detail or Special Accommodation Notice shall not be canceled without approval from an appropriate medical provider *after examination of the prisoner*. Whenever a Medical Detail or Special Accommodation Notice is cancelled prior to its expiration date, health care staff shall distribute to the appropriate prisoner and send staff-written notification of the cancellation in the

4

      same manner set forth in Paragraph G.  Appropriate health information staff shall ensure proper entries are made as set forth in Paragraph J.  A nurse may discontinue a medical detail ordered by another nurse only after evaluation determines no medical necessity.  A nurse may not discontinue a medical detail or special accommodation notice ordered by a medical provider.

L. *An employee who believes the options provided pursuant to a Medical Detail or Special Accommodation Notice compromise facility safety or security shall report the concern through the chain of command to the Warden.*  If the Warden believes facility safety or security is being compromised, the medical provider shall seek alternative options to meet the medical need that does not compromise facility safety or security.  If alternative options are available, the medical provider shall cancel the current Medical Detail or special accommodation notice and issue a new one.  If alternative options are not available, the medical provider shall notify the Warden.

M. *An employee who observes a prisoner acting inconsistently with a medical restriction or otherwise questions the current medical need for a Medical Detail or Special Accommodation Notice shall report the concern to a QHP [Qualified Health Provider].*  If, *after examination of the prisoner*, the medical provider believes there is no current medical need for the Medical Detail or Special Accommodation Notice, they shall cancel the Medical Detail or Special Accommodation Notice.

(ECF No. 25-2, PageID.189) (emphasis added).

### C. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that

evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **D.**    **Analysis**

        *1.*    *Eighth Amendment Claim*

Porter claims that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by acting with deliberate indifference to his serious medical needs. To prevail on such a claim, Porter must satisfy two substantive elements, one objective and one subjective. Specifically, he must show that he had a serious medical need (the objective prong) and that the Defendants, being aware of that need, acted with deliberate indifference to it (the subjective prong). *See Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010).

With respect to the objective prong, a serious medical need must be more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal

6

quotations omitted). "Courts recognize that '[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *See Cummings v. Klee*, No. 14-10957, 2019 WL 5800289, at *7 (E.D. Mich. August 4, 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

With respect to the subjective prong, the plaintiff must show that the defendants possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk by failing to take reasonable measures to abate it." *Broyles*, 478 F. App'x at 975 (internal quotations omitted).

Moreover, "causation must be proved to succeed on a claim of deliberate indifference." *Slone v. Lincoln Cty., Kentucky*, 242 F. Supp. 3d 579, 593 (E.D. Ky. 2017) (citing *Dabbs v. Bolin*, 21 F.3d 427 (6th Cir. 1994)); *Moore v. Davis*, No. 2:15-CV-140, 2018 WL 3062068, at *2 (W.D. Mich. June 21, 2018) ("Finally, the plaintiff must show that the defendant's deliberate indifference proximately caused the plaintiff's injuries.") (citing *Doe v. Sullivan Cnty.*, 956 F.2d 545, 550 (6th Cir. 1992)); *Rouse v. Caruso*, No. 06-CV-10961, 2015 WL 632025, at *4 (E.D. Mich. Feb. 13, 2015) ("the prison administrators' deliberate indifference [must be] be the actual and proximate cause of a prisoner's injuries."). "[A]lthough the question of proximate causation in a section 1983 action is sometimes for the court and sometimes for the jury, the court decides whether reasonable disagreement on the issue is tenable." *Galeski v. Ricumstrict*, No. 17-12495, 2019 WL 5800291, at *8 (E.D. Mich. July 31, 2019), *report and recommendation adopted*, 2019 WL 4409711 (E.D.

7

Mich. Sept. 16, 2019), *aff'd*, No. 19-2128, 2020 WL 5822531 (6th Cir. June 30, 2020) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996)).

          a.      *Objective Prong*

Based on the evidence before the Court, Porter has shown that his alleged "major paralysis" constitutes a serious medical need. As required in considering a motion for summary judgment, this Court reviews the facts in the light most favorable to Porter, the non-moving party. Porter suffered his fourth stroke on September 25, 2016. (ECF No. 17, PageID.116.) As a result of this stroke, Porter suffered "major paralysis, blurred speech and medium brain damage" resulting in the inability to participate in major life activities such as walking, bathing, eating and using the rest room. (*Id.*) Indeed, Porter states that he was "'wheel-chair bound' from the time [he] transferred to SMT to [the time he] transferred out." (ECF No. 28, PageID.274.)

The ability to walk clearly constitutes one of life's basic necessities. Moreover, Porter alleges that he suffered "excruciating" pain when he was forced to use a walker, rather than a wheelchair, to move about the chow hall. (ECF No. 25-2, PageID.186.) Under these circumstances, Porter has satisfied the objective component of his Eighth Amendment claim sufficient to survive Defendants' summary judgment motion. *See Pugh v. Holden-Selby*, No. 12-CV-12357, 2013 WL 5874727, at *15 (E.D. Mich. Oct. 30, 2013) (holding that the "need for a wheelchair, even if for distance only, is a serious medical need."); *Robinson v. Doe*, No. CV 19-9915, 2019 WL 6879665, at *6 (E.D. La. Nov. 25, 2019), report and recommendation adopted, No. CV 19-9915, 2019 WL 6877653 (E.D. La. Dec. 17, 2019) ("The failure to repair an inmate's wheelchair does constitute the denial of a serious medical need under the *Farmer* [*v. Brennan*, 511 U.S. 825 (1994)] objective prong when the failed function of the wheelchair could lead to injury and the wanton infliction of pain.").

Defendants do not address the objective component head-on in their summary judgment motion. Rather, they seem to argue that because "use of his wheelchair inside chow hall was outside SMT's 'wheelchair for distance only' policy and facility designation … it cannot be said that [Porter] was deprived of a serious medical need …." (ECF No. 25, PageID.167.) But this argument is backward; whether an inmate's medical need is "serious" turns not on what any particular facility's policies are, but on the inmate's condition, and its impact on his ability to engage in life's necessities free of pain that rises beyond mere discomfort and inconvenience. *Talal*, 403 F.3d at 426. Again, here, the only evidence in the record is that Porter required a wheelchair to be able to move about, and that he experienced "excruciating pain" after he was required to use a walker in chow hall. For all of these reasons, Porter has at least raised a material question of fact as to the objective component of his Eighth Amendment claim.

       *b.*  *Subjective Prong*

Because the Court is recommending that Defendants' motion be granted on other grounds, it need not determine whether Porter has raised a material question of fact as to the subjective prong. Yet, because Defendants' argument is similar in some respects to their objective prong argument, a brief discussion is warranted.

Defendants argue that Porter cannot satisfy the subjective prong of his Eighth Amendment claim because they "acted reasonably and appropriately for safety reasons" "in questioning [Porter's] medical detail on the day of the incident, as it was clear to them that [Porter's] use of a wheelchair inside chow hall was inconsistent with SMT's wheelchair for distance only policy." (ECF No. 25, PageID.165-66.) While Defendants are correct that Porter's chow hall wheelchair detail contravened SMT's "wheelchair for distance only" policy, it is unclear that they "act[ed] appropriately" by taking their concern to the prison healthcare unit. Pursuant to PD 160, ¶L, "[a]n

9

employee who believes the options provided pursuant to a Medical Detail or Special Accommodation Notice compromise facility safety or security **shall report the concern through the chain of command to the Warden**." (ECF No. 25-2, PageID.189) (emphasis added). Thus, rather than going to healthcare with their concern, Defendants should have reported the issue through the proper "chain of command to the Warden."[2] At the same time, even assuming Defendants failed to follow PD 160, that would not give rise to a constitutional violation. *See, e.g.*, *Coleman v. Martin*, 363 F. Supp. 2d 894, 903 (E.D. Mich. 2005) ("the failure of a prison, or the state, to follow its own policies and procedures does not amount to a constitutional violation."). It is also unclear what Defendants' actually knew about Porter's condition on the date in question; Porter himself avers that prior to that date, he had not used his wheelchair in chow hall when defendant Conant was working there. (ECF No. 28, PageID.274) ("I used a wheel chair in the chow hall the whole time [I] was at SMT, **with the exception of when CO Conant worked the chow hall** (which was infrequent), from January 2017, until the date of my incident with CO Conant and CO Falor, on August 28, 2017.") (emphasis added).

While Defendants' conduct was flawed in certain respects, the Court need not decide whether it rose to the level of satisfying the subjective prong of Porter's deliberate indifference claim. This is because even if it did, ultimately, Porter is complaining about the fact that his

---

[2] In response to this point, the Defendants rely on PD 160, ¶ M, which provides, "An employee who observes a prisoner acting inconsistently with a medical restriction or otherwise questions the current medical need for a Medical Detail or Special Accommodation Notice shall report the concern to a QHP." (ECF No. 25-2, PageID.180-81, 189; 25-3, PageID.205-06.) But that provision appears inapposite for two reasons. First, Defendants never observed Porter acting inconsistently with *his* medical restriction of wheelchair for distance *and in chow hall*. Second, Defendants were not questioning Porter's *medical need* for that particular restriction. Rather, they were motivated by what the Court sees as a potentially dangerous and circular logic that Porter, regardless of his actual medical need, could not have a "wheelchair in chow hall" detail because SMT was a "wheelchair for distance only" facility.

10

medical detail was changed to "wheelchair for distance only," and, as discussed below, that change was not made by Defendants, but by NP Watson.

### c. Causation

Porter's deliberate indifference claim against Defendants fails because Defendants were not the proximate cause of any injury he suffered. In his amended complaint, Porter alleged:

> 14. CO Falor and CO Conant **had plaintiff's wheelchair confiscated** contrary to the Medical Provider's prescribed accommodation for plaintiff's serious medical condition. . . .
>
> * * *
>
> 16. Defendants Conant and Falor intentionally, or with deliberate indifference, or with unreasonable risk of serious damage to Plaintiff's future health, and of Plaintiff's constitutional rights, **did deprive Plaintiff of his medically prescribed wheelchair**.

(ECF No. 17, PageID.116-17) (emphasis added).

These are only allegations, though, and Porter presented no *evidence* that the Defendants either "confiscated" or "deprived" him of his wheelchair. On the contrary, as Defendants argue, the undisputed evidence is that they merely brought the issue to NP Watson's attention at SMT's healthcare unit, and that it was NP Watson who made the decision to modify Porter's medical detail. (ECF No. 25, PageID.165-66; No. 25-4, PageID.228-29; No. 25-2, PageID.179-80; No. 25-3, PageID.204-05.) NP Watson avers in his affidavit, "As a QHP working in the healthcare unit at the time, I reviewed [Porter's] medical detail, and made appropriate revisions to [his] detail to reflect that 'Patient to use wheelchair for distance only. Patient to use walker while in chow hall and while in health care.'" (ECF No. 25-4, PageID.228-29.) In fact, NP Watson still stands by his decision to adjust Porter's medical detail, averring, "The revisions I made to [Porter's]

Medical Detail are consistent with my understanding of SMT's wheelchair policy and facility designation."³ (*Id.*, PageId.229.)

Because it is undisputed that the decision to adjust Porter's medical detail was made by NP Watson, there can be no reasonable disagreement that Defendants were not the proximate cause of Porter's alleged injuries, and his deliberate indifference claim against them fails as a matter of law. *See Galeski*, 2019 WL 5800291, at *8; *Moore*, 2018 WL 3062068, at *2; *Rouse*, 2015 WL 632025, at *4. Accordingly, Defendants are entitled to summary judgment as to Porter's Eighth Amendment deliberate indifference claim.

2. *Americans with Disabilities Act Claim*

In order to state a claim under Title II of the ADA, Porter must establish that: (1) he is a qualified individual with a disability; (2) he was excluded from participation in a pubic entity's services, programs or activities or otherwise discriminated against; and (3) such exclusion or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132. In the prison setting, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable modification, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity." *See* 42 U.S.C. § 1213(2). A disability is an impairment that affects essential life activities, such as walking, eating, learning and self-care. *Id*.

---

³ The Court's concern noted above, *supra* at 10 fn. 2, about the "potentially dangerous and circular logic" of evaluating an inmate's medical detail based on the facility's policy or designation, as opposed to his actual medical needs, is even more acute with respect to NP Watson. Unlike Defendants, NP Watson is a medical professional, and it appears that PD 160, ¶ K required an "evaluation determin[ing] [Porter had] no medical necessity" for a wheelchair in chow hall before adjusting his medical detail. However, NP Watson is not a defendant in this case.

Porter has clearly presented sufficient evidence to at least raise a material question of fact as to the first two prongs of his claim. He avers that he required a wheelchair to be able to move about the chow hall without experiencing extreme pain. If true, that would show both that he is a qualified individual with a disability and that requiring him to use a walker instead of a wheelchair excluded him from participation in SMT's food service.

Porter's ADA claim against the Defendants fails, however, as to the third prong for two reasons. First, Porter presents no evidence that Defendants raised the issue with NP Watson for any reason other than that Porter was contending he had been issued a medical detail that was, in fact, contrary to SMT's policy and designation as a "wheelchair for distance only facility." Although Defendants may have erred in terms of taking that issue to healthcare instead of "through the chain of command to the Warden," PD 160, ¶ L, Porter does not explain how that error constitutes "discrimination [] by reason of [his] disability" as opposed to negligence or even recklessness. Second, as discussed above, to the extent changing Porter's medical detail impeded his ability to participate in SMT's food service, that change was made by NP Watson, not Defendants. For all of these reasons, Defendants are entitled to summary judgment as to Porter's ADA claim.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment **(ECF No. 25)** be **GRANTED** and that this case be **DISMISSED**.

Dated: December 28, 2020  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2020.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager